(690 P.2d 959)
No. 56,112

STATE OF KANSAS, *Appellee*, v. CARL E. PENDELTON, *Appellant*.

Opinion filed November 21, 1984.

*John J. Ambrosio,* of John J. Ambrosio, Chartered, of Topeka, for the appellant.

*Frank A. Caro, Jr.,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before PARKS, P.J., BRISCOE, J., and JEROME HARMAN, Chief Judge Retired, assigned.

HARMAN, C.J. Retired: Carl Pendelton appeals his conviction of aggravated indecent solicitation of a child. K.S.A. 21-3511. The big issues are whether K.S.A. 60-460(dd) permits unreliable hearsay evidence in violation of appellant's confrontation rights under the Sixth Amendment to the federal Constitution and whether the trial court properly applied that statute.

On the afternoon of October 24, 1982, two boys whom we shall designate as A, aged 7, and L, aged 11, went to the Rollaway Auction House at 2305 East 10th Street in Topeka, hoping to sell some car parts. Pendelton, who was part owner and operated a booth at the auction house, declined buying the parts, but according to the testimony of L, told the boys to return later.

The boys came back to the auction house near closing time, between 4:30 and 5:00 p.m. and asked if they could help Pendelton cover his tables. He agreed to let them help and, while waiting, the boys sat on the floor of his booth playing with Star Wars cards. L testified that Pendelton came over to where the boys were sitting, went down on his knees, unzipped his pants, pulled out his penis, and offered the boys money to "jack him off." The boys said, "No."

L also testified that Pendelton showed them pictures of naked women in "Playboy" magazines. Appellant then told A to go away and took L to a closet at the back of his booth where he asked L to strip down so he could take pictures of him. L refused to do so. The door to the closet remained open and L at no time tried to run away from the defendant. A told his mother, who testified at trial as to his statements, that he kept peeking to see what was happening to L after appellant told him to go away.

The boys helped Pendelton cover his tables and carry some items to his car, received a few items in payment for their help, and returned home about 5:30 p.m.

Finding his mother had company, A went to L's house but returned home shortly thereafter. His mother testified that he hung around her "looking at her acting weird." He told his mother that "this man had shown him some dirty pictures and exposed himself" to them. He said the man showed them his "ding-a-ling" and offered them money to touch it.

Appellant testified that the boys helped him close down his booth and received some items in payment, but that he did not perform the acts in question. He testified he caught the boys looking through magazines displaying nudity and told them they shouldn't be reading them.

After A told his mother of the events, she called L's mother, and they decided to call the police. After brief questioning, the boys identified the defendant in a photo lineup.

During the trial, but outside the presence of the jury, a hearing was held pursuant to K.S.A. 60-460(dd) to determine whether A was qualified to testify. The court found, "the witness is disqualified for the reason that it appears that on inquiry he cannot relate in a logical progression the sequence of events, or, for that matter, the factual situation that gives rise to the issues in this particular lawsuit."

A's mother was allowed to testify as to his statements at trial under the new hearsay exception at K.S.A. 60-460(dd). The jury found the defendant guilty of aggravated indecent solicitation of a child in violation of K.S.A. 21-3511 (Count I) and sexual exploitation of a child in violation of K.S.A. 21-3516 (Count II). A motion to set aside the verdict on Count II was granted. The court suspended imposition of sentence on Count I and placed

appellant on two years supervised probation. This appeal ensued.

K.S.A. 60-460(dd) establishes a new exception to the general rule of evidence excluding hearsay:

"(dd) In a criminal proceeding or in a proceeding to determine if a child is a deprived child under the Kansas juvenile code or a child in need of care under the Kansas code for care of children, a statement made by a child, to prove the crime or that the child is a deprived child or a child in need of care, if:

(1) The child is alleged to be a victim of the crime, a deprived child or a child in need of care; and

(2) the trial judge finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, the statement is apparently reliable and the child was not induced to make the statement falsely by use of threats or promises.

If a statement is admitted pursuant to this subsection in a trial to a jury, the trial judge shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, any possible threats or promises that might have been made to the child to obtain the statement and any other relevant factor."

Appellant contends that K.S.A. 60-460(dd) unconstitutionally permits unreliable hearsay at trial in violation of a defendant's right under the confrontation clause of the Sixth Amendment. He further contends that even if the statute is constitutional on its face, the trial court improperly applied the statute to the facts of this case.

The right to confront one's accusers under the Sixth Amendment is not absolute. In general, the courts have determined that the confrontation clause restricts the range of admissible hearsay by requiring showings of necessity and reliability. The use of hearsay against an accused does not violate the confrontation clause when a declarant is unavailable and his statements bear an adequate "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 62-66, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980); *State v. Myers,* 229 Kan. 168, 171-72, 625 P.2d 1111 (1981); *State v. Rodriquez,* 8 Kan. App. 2d 353, 356-57, 657 P.2d 79, *rev. denied* 233 Kan. 1093 (1983).

K.S.A. 60-460(dd)(2) allows for admission of a child victim's statements only if the trial judge "finds, after a hearing on the matter, that the child is disqualified or unavailable as a witness, [and] the statement is apparently reliable  . . . ." The stat-

ute itself requires the trial judge to make the two determinations required by case law to satisfy the mandate of the Sixth Amendment in the admission of hearsay. Given these restrictions in the statute, we cannot find that the statute violates the Constitution on its face.

We next look to the facts to determine if the statute as applied violated the appellant's right to confrontation under the Constitution.

Initially the trial court found, after a hearing, that A was unavailable as a witness because he could not relate in logical progression the sequence of events or factual situation that gives rise to the issues in the lawsuit. Neither side disputes this finding. It next concluded that the statement was apparently reliable since the child, at his first opportunity, initiated the conversation, relating the facts to his mother in a situation completely removed from threats or promises. Appellant contends that this finding, without more, does not provide adequate indicia of reliability or a particularized guarantee of trustworthiness to satisfy the requirements of the Sixth Amendment.

Initially appellant suggests that since the child victim's statements are not made under oath or subject to cross-examination, flaws in perception or memory cannot be tested.

Addressing the issue of cross-examination of a child victim in *United States v. Nick*, 604 F.2d 1199, 1202 (9th Cir. 1979), the court noted:

"If the sole method by which the confrontation clause could be satisfied was the opportunity to cross-examine the declarant in court either at the time the statement was made or at the time the statement was offered, the infant's statement could never be received in evidence."

The court went on to say:

"[The] Supreme Court in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), made plain that the availability of cross-examination was not the sole criterion by which to test the admissibility of hearsay over confrontation clause objection. In this context, the essential confrontation clause issue is whether the admissible hearsay, under all of the circumstances, has a very high degree of reliability and trustworthiness and there is a demonstrated need for the evidence. The availability of cross-examination is simply one of the means by which the quality of reliability is tested.

"Both the confrontation clause and the hearsay rule are based, among other things, upon a belief that some kinds of relevant evidence should not be admitted unless the probative value of the evidence and its trustworthiness under all of the circumstances substantially outweigh the risks of unreliability that are assumed

to flow from the inability to test the declarant's credibility, memory, perception, and ability to communicate in the courtroom in which the testimony is received. The exceptions to the hearsay rule found in the Evidence Code, largely, but not entirely adopting common law exceptions, are designed to facilitate the admission of probative evidence and, at the same time, to minimize the risks of unreliability." 604 F.2d at 1202-03.

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66. Although many statements admissible under K.S.A. 60-460(dd) would fall within well-established exceptions, (dd) is broader, and is not a firmly rooted exception. Pierron, *The New Kansas Law Regarding Admissibility of Child-Victim Hearsay Statements,* 52 J.K.B.A. 88, 90-91 (1983); McNeil, *The Admissibility of Child Victim Hearsay in Kansas: A Defense Perspective,* 23 Washburn L.J. 265 (1984). See *State v. Rodriquez,* 8 Kan. App. 2d 353.

Arguably the statement of A, in addition to being admissible under K.S.A. 60-460(dd), could have been admitted under the exceptions of K.S.A. 60-460(d)(2) or (3) as well. Those sections provide for the admission of the following statements:

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made . . . (2) while the declarant was under the stress of a nervous excitement caused by such perception or (3) if the declarant is unavailable as a witness, by the declarant at the time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

In *Rodriquez* a four-year-old victim of sexual abuse told her mother the defendant had molested her. The statement was made spontaneously, at the first opportunity when the child was reunited with her mother four to six hours after the event. The victim was disqualified as a witness, but the trial court admitted the hearsay statement of the child victim under K.S.A. 60-460(d)(2) and (3). The court found sufficient evidence supported the finding of the trial court and the admission of the statement at trial:

" 'This court has concluded the statements were properly admitted under K.S.A. 60-460(*d*)(2) or (3). Specifically, the court believes the statements made by [the child] approximately four hours after leaving Defendant's custody and *immedi-*

*ately* upon being reunited with her mother were made under the stress of nervous excitement caused by perception of the event when the matter had been recently perceived and while [the child's] recollection was clear, made in good faith with no incentive to falsify or to distort. It is pertinent that the statements were not solicited by the mother or elicited in an interrogational manner; rather the statements were spontaneous, directed against the Defendant with whom she had had an affectionate paternal relationship, and immediately made when she was returned to the one person she could trust and confide in, her mother. There is nothing in the evidentiary record to indicate the child's statements were made except in good faith with no incentive to falsify or distort. This court finds very persuasive the fact that the child told her mother what happened at her first opportunity. It cannot be considered unusual or extraordinary that a four year child would be unwilling or psychologically unable to disclose such a personal assault to strangers and nonrelatives. (*State v. Noble*, 322 So. 2d 170; *State v. Jones*, 204 K. 719; *Heflin v. State*, supra, and 89 ALR 3rd 102).' " (Emphasis in original.) 8 Kan. App. 2d at 355-56.

Many other jurisdictions have also admitted the statements of child victims of crime as spontaneous declarations when the child was disqualified as a witness. See Annot., 15 A.L.R.4th 1043, § 3; Annot., 89 A.L.R.3d 102. In *State v. Wilson*, 20 Or. App. 553, 532 P.2d 825 (1975), the court looked to a number of factors in determining whether the statement of the victim was sufficiently impulsive or unreflective in nature to be admitted as a spontaneous declaration. These factors included: (1) the time element between the occurrence of the crime and the statements; (2) the condition of the victim at the time the statement was given; (3) whether the statement was made in response to an inquiry; (4) whether the declaration was made at the first opportunity subsequent to the alleged occurrence; and (5) the age or mentality of the victim. Similar factors are presented in K.S.A. 60-460(dd) where they are required to be part of the instructions to a jury when a statement is admitted under that section.

Applying these criteria, it appears that the seven-year-old's statement probably could have been admitted under K.S.A. 60-460(d)(2), a firmly rooted exception from which reliability could be inferred. The statement was made to his mother within two hours after the occurrence of the crime, at a time when A was still showing signs of being upset by the occurrence. A initiated the conversation with his mother as soon as her company left, at his first opportunity to talk with her alone.

Only one Kansas case, *Rodriquez*, has addressed the issue of reliability under a relatively new hearsay exception, the exception under K.S.A. 60-460(d)(3). In finding that the admission of

the statement in *Rodriquez* did not deny the defendant's right to confrontation, the court held:

"On this point, the trial court relied heavily upon the testimony of a child psychologist who testified outside the presence of the jury in the portion of the trial dedicated to determining whether the child was qualified to testify. The psychologist was of the opinion that the child was capable of understanding the moral duty of telling the truth. She was able to tell the doctor what had happened by using drawings and simplified anatomical charts. He spent approximately two hours testing her and concluded she was of normal intelligence, somewhat behind her age group as to receptive vocabulary skills, and had not been programmed by her mother. The trial court concluded that the evidence clearly indicated that the child made the statements to her mother in good faith and with no incentive to falsely accuse defendant. Under the totality of the circumstances, we conclude that defendant was not denied his constitutional right of confrontation." 8 Kan. App. 2d at 357.

Additionally, in *Rodriquez* the court looked at medical evidence which corroborated the occurrence of the crime.

In this case the defendant's motion for a psychological examination of the witness was denied. However, unlike the child victim in *Rodriquez*, A was subjected to questioning for several minutes in the hearing to determine his unavailability as a witness. The court had the benefit of this testimony, and at no time did he find A to be incapable of knowing what the truth was or of telling the truth. While the testimony of a psychologist might have been helpful to the trial court, under the circumstances of this case we cannot find that a psychological examination was required to insure the reliability of the statement.

The same is true of the medical evidence. In a case of solicitation, medical evidence will never be available. However, the testimony of L serves to corroborate A's statement, and indicates its reliability.

Where a statement is made by a child victim to his parent shortly after the occurrence of the crime, when the victim is still exhibiting signs of being upset by the occurrence, at the first opportunity for such communication; the statement is corroborated by other testimony at trial; and the trial judge has an opportunity to evaluate the trustwórthiness of the child victim in a hearing to determine his unavailability as a witness, we cannot find that the admission of the statement violates any of appellant's constitutional rights.

Finally, appellant challenges the sufficiency of the evidence to convict him. On appeal the issue is whether the evidence,

viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

Appellant was convicted of violating K.S.A. 21-3511, which provides:

"**Aggravated indecent solicitation of a child.** Aggravated indecent solicitation of a child is the accosting, enticing or soliciting of a child under the age of twelve (12) years to commit or to submit to an unlawful sexual act."

The victims here, A and L, were both under the age of twelve. The testimony of L, corroborated by that of A's mother as to A's statements, amply showed that appellant solicited the two boys to commit the unlawful sexual act of lewd and lascivious behavior, defined in K.S.A. 1983 Supp. 21-3508(b) as:

"the exposure of a sex organ in a public place, or in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another."

The evidence amply supports the conviction. Judgment affirmed.